William J. McDONALD and Dorothy C. McDonald, Plaintiffs-Cross-Appellants,

v.

The CITY OF LAKE LOTAWANA, Defendant-Cross-Respondent,

and

Lake Lotawana Development Company, et al., Defendants-Cross-Respondents.

No. WD 37828.

Missouri Court of Appeals, Western District.

Nov. 18, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 23, 1986.

Jerome D. Riffel, Kansas City, for William J. and Dorothy C. McDonald.

Michael W. Manners, James T. Cook, Independence, for City of Lake Lotawana.

Milton B. Edmonson, Greenwood, for Lake Lotawana Development Co.

Before CLARK, C.J. and NUGENT and LOWENSTEIN, JJ.

CLARK, Chief Judge.

This suit involves the regulation of boat docks and their construction and placement on a privately owned recreational lake. In response to a petition by William and Dorothy McDonald, the trial court issued a mandatory injunction directing that a permit be issued to the McDonalds for a boat dock. The court also defined the respective authorities of the City of Lake Lotawana and the Lake Lotawana Development Company to control dock structures and denied the McDonalds leave to amend their pleadings to pursue a claim for damages against the Development Company. The judgment is the subject of an appeal by the Development Company and a cross-appeal by the McDonalds.

The dispute began in 1981 when the McDonalds, who are property owners in the Lake Lotawana residential subdivision, sought a permit to build a boat dock on the lake. The body of water and a peripheral strip of land are owned by the Lake Lotawana Development Company which originally platted the area selling lots but retaining ownership of the lake and certain rights associated with its use. In former years, the sole regulatory authority over the lake was exercised by the Development Company but in 1959, the City of Lake Lotawana was incorporated as a fourth-class city and thereafter, it undertook to exercise municipal power over the lake which is wholly within the city limits.

Subject to rules and regulations prescribed by the Development Company, lot owners such as the McDonalds are by deed restrictions and dedications entitled to use the lake for boating and to moor boats. This right has been recognized to include the erection and maintenance of boat docks secured to the peripheral strip of land owned by the Development Company. The City of Lake Lotawana has also assumed to regulate boat docks placed on the lake and requires a city building permit before any dock may be placed on the lake. At the same time, the City also recognizes the authority of the Development Company to control the location and type of docks and

any city building permit for a dock is conditional on approval being obtained from the Development Company.

The problem associated with granting permission for the McDonalds' dock arose in the main because their property, although contiguous to the peripheral strip, is in a dry cove and there is no access to the water from their lot. Accordingly, any dock which would be of use for boating could only be located opposite the peripheral strip adjacent to the lot of another owner.

The McDonalds first made request of the City for a dock permit. In the company of a city inspector, a location was selected and after litigation with the owner of the property which fronted the selected site, the permit was granted, subject, however, to Development Company approval. Thereafter, the McDonalds requested that the Development Company approve the permit, but the Development Company did not act to approve or disapprove the application. The only rules and regulations of the Development Company applicable to boat docks are dated in 1943. There has been an ongoing dispute between the City and the Development Company as to whether the City has any authority to regulate boat docks on the lake. Because the City does accept the authority of the Development Company to approve or disapprove a dock location selection even though City approval may have been granted, the McDonalds have been unable to proceed with construction of their dock by reason of inaction by the Development Company on the permit request.

The facts summarized above have been extracted from a stipulation filed by the parties with the trial court and exhibits which were attached. The parties further stipulated that the facts were sufficient to permit a decision on the issues. The stipulation also included as evidence the deposition of Louise Rehn to which reference will subsequently be made.

The points on the appeal by the Development Company, not necessarily in the order briefed, are: (a) the court erred in issuing a

mandatory injunction because the facts do not justify that relief; (b) the court erred in its decision upholding the right of the City to control lake activities because by statute the City is precluded from regulating private lakes and this lake in particular; and (c) the court erred in sua sponte dismissing Count II of the Development Company's cross-petition against the City because the dismissal was without notice and not responsive to the claim of any party. In a cross-appeal, the McDonalds contend the trial court erred in denying plaintiffs leave to amend their count claiming damages on account of the permit dispute. The appeal by the Development Company will be addressed first.

## THE MANDATORY INJUNCTION

The judgment by the trial court on Count II of the McDonalds' petition seeking an injunction was to order the Development Company forthwith to grant its written permission for construction of the McDonald boat dock. The Development Company in its Point III asserts this judgment to have been in error because, to quote from the brief, " * * * the stipulated evidence shows that appellant [the Development Company] does have effective rules and regulations for obtaining dock permits which it is willing and desires to enforce and with which plaintiffs have failed to comply * * *."

■ In violation of Rule 84.04(d), the point does not state wherein and why the court erred, a deficiency which, in the particular way this case was submitted, poses an unusually difficult problem of isolating what error is asserted. As was noted earlier, the case was submitted to the court on stipulated facts which were also agreed to be all the facts necessary for decision. In this circumstance, the stipulation dispenses with proof of the matters stipulated and a party who so stipulates waives his right to advance subsequent contentions contrary to the stipulated facts. *In the Matter Of: An Omega Brand*, 676 S.W.2d 292, 294–95 (Mo.App.1984). The point as raised cannot, therefore, present any question of contest-

ed facts or weight or substantiality of the evidence because those issues are foreclosed by the stipulation. The only potential argument in this situation, which we construe the Development Company to raise, is that the agreed facts either do not support or are contrary to the findings made by the trial court.

In rendering its judgment, the trial court made findings of fact and conclusions of law which in summary recited: (a) the McDonalds secured approval from the City of Lake Lotawana for the construction of a boat dock at a designated location on the lake; (b) application was thereafter made to the Development Company for a permit but, after request by the McDonalds for a decision, the Development Company refused to approve or disapprove the application; and (c) the McDonalds were unable to build the dock because the City permit is ineffective without concurrent approval by the Development Company. These findings were well within the stipulated facts and are reinforced by the deposition testimony of Louise Rehn, president of the Company. That deposition was admitted as evidence under the stipulation. Mrs. Rehn stated that she did not know under what conditions a dock permit would be approved and company policy was not to sign permits.

The assertions in the point of error that the Development Company had effective rules applicable to boat docks, that it was willing to enforce those rules and that the McDonalds were denied a permit for failure to comply with the rules are simply baseless under the agreed facts. Such rules as there were had not been updated for at least forty years and those rules had been neither applied nor enforced since the incorporation of the City of Lake Lotawana. There was no indication that any response at all had been given to the McDonalds, let alone any statement of conditions under which a permit would issue. Taking into account all of the stipulated evidence in the case, it is apparent the Development Company was contesting the right of the City to participate in the dock permit process

and in consequence, it simply "pigeon holed" applications to avoid deciding contests among lot owners over dock locations.

■ The judgment by the trial court conformed to the stipulated facts and is therefore supported by the evidence. It is to be noted that the Development Company makes no contention that the mandatory injunction was overbroad in ordering issuance of the dock permit instead of directing the Company to act on the application. This opinion therefore does not pass on the question of whether the absence of current company rules and policy for processing dock permit applications is a sufficient ground upon which the court may assume the permit approval function. Point III of the Development Company's brief is denied.

## REGULATION OF BOAT DOCK CONSTRUCTION ON LAKE LOTAWANA BY THE CITY OF LAKE LOTAWANA

■ In a cross-petition for declaratory judgment and injunction, the Development Company sought the court's judgment that the City had exceeded its powers as a fourth-class city when it adopted an ordinance purporting to regulate activity on the lake, particularly in the area of boat dock permits. The substance of the petition claim was that Lake Lotawana as a privately owned body of "navigable" water is solely under the authority and control of the Development Company as owner and the City has no jurisdiction to regulate the location or construction of docks placed on the lake.

The trial court's judgment denied the claim. In its briefed Points I and II, the Development Company says the judgment is in error, first because municipal regulation of the lake is precluded by § 306.190, RSMo. 1978 [1] and second, even if the City has been given regulatory authority under §§ 89.010 to 89.140, the sections are inapplicable because the shoreline mileage of Lake Lotawana is less than 150 miles.

The general regulatory powers of a municipality over buildings and structures are set out in § 89.020. Assuming the location at issue is within the city limits, the City of Lake Lotawana holds the power to regulate structures under this statute unless the power has been otherwise restricted where the structure is located on water rather than land. The Development Company asserts that any municipal regulation which involves water must find its authority in Chapter 306, not Chapter 89, and under the former, municipalities are precluded from regulating private waters. The contention is convoluted and is misapplied.

Chapter 306 is a legislative enactment whereby the state undertakes to set out various rules and regulations for the use of certain waters within the state by craft capable of water transportation. As an added means for regulation, the statute permits local government units to adopt ordinances controlling operation of watercraft so long as such ordinances do not conflict with the statutes. None of the provisions of Chapter 306 are applicable to privately owned navigable waters because, by the definition of "waters of this state" set out in § 306.010(7), RSMo. Cum.Supp. 1984, those bodies of water are excluded. The Development Company argues that because there is no municipal regulatory authority over operation of watercraft on private lakes, the City may not regulate location and construction of boat docks on Lake Lotawana. Cited is *City of Lake Lotawana v. Meagher*, 581 S.W.2d 105 (Mo.App. 1979). There, the City had adopted a water traffic ordinance and Meagher was cited for a violation. The court held the City had no power under Chapter 306 to regulate operation of watercraft on a private lake and, in the absence of any other or general delegation by statute of police power to the municipality for regulation of watercraft, the ordinance was void.

The *Meagher* case points up the subject area included in Chapter 306, and the municipal authority derived therefrom, that is, the control of watercraft operation. The

1. All statutory references are to RSMo. 1978 except as noted.

chapter has nothing whatever to do with building permits or control of structures even though such may be, as here, associated with watercraft operation. The City of Lake Lotawana has the authority, pursuant to Chapter 89, to provide by ordinance for regulation of structures and boat docks that are within the scope of this term.

In a following point, the Development Company contends that even if § 89.020 formerly gave the City the power to regulate construction of boat docks, that authority was lost when the statute was amended in 1985. Under the 1985 enactment, the regulatory authority of cities pursuant to § 89.020 was broadened to include water 100 yards beyond the shoreline provided the city boundaries are partially contiguous with a portion of a lake having a shoreline of at least 150 miles. The Development Company says Lake Lotawana is a lake concededly having less than 150 miles of shore and therefore § 89.020, as amended in 1985, is not available as a source of delegated powers to support the subject regulation.

The first and pre-emptive answer to this argument is that the amendment of § 89.020 in 1985 is inapplicable to the controversy regarding issuance of a boat dock permit by the City of Lake Lotawana to the McDonalds in 1981 and is certainly irrelevant to the claim that the trial court erred in its judgment rendered in 1984. There is no indication by the language of the amendment that it was intended to have any retroactive effect and, consequently, under settled law, it is presumed the statute operates prospectively only. *Department of Social Services v. Villa Capri Homes, Inc.*, 684 S.W.2d 327, 332 (Mo.banc 1985). Moreover, it is apparent that any change in the delegation of the police power by the state to a municipality could not retroactively validate regulations which were invalid when made nor could it impair rights acquired under authorization by the municipality which were valid when issued, Art I, § 13, the Constitution of Missouri.

Despite the inapplicability to this case of the 1985 amendment to § 89.020, this opinion does not suggest acceptance of the Development Company's argument that if applicable, the present form of the statute denies the City of Lake Lotawana authority to regulate boat docks on Lake Lotawana. The obvious intent of the amendment was to broaden rather than narrow the powers of municipalities over zoning and related matters. Additionally, it appears the legislature was concerned with activities beyond the municipalities' traditional control over shoreline related construction. In the present case, it appears from the evidence of stipulated exhibits that Lake Lotawana boat docks all bear a permanent attachment to the land by means of cables with access over ramps resting partially on the land and partially on the floating dock. The necessity for use of the land as a means of mooring and access is enough, irrespective of the floating component, to permit the City to regulate that aspect of the docks as structures. Points I and II of the Development Company's appeal are denied.

### DISMISSAL OF THE DEVELOPMENT COMPANY'S CROSS-PETITION FOR DAMAGES

In Count II of its cross-petition, the Development Company sought to recover damages from the City of Lake Lotawana on account of the McDonald boat dock controversy specifically and the confrontations over dock regulations generally. The theory for recovery, paraphrased from the petition, was that the City had unlawfully interfered with the relationships between the Company and Lake Lotawana property owners by enacting ordinances on the subject of boat docks. The City's answer alleged, among other defenses, that the count stated no cause of action on which relief could be granted.

A part of the stipulation referred to earlier in this opinion reserved for future disposition the claims for damages and therefore the substantive aspect of the cross-petition Count II was not submitted under the stipulation. The record shows that disposition of the McDonalds' petition and the declara-

tory judgment aspects of the Development Company's cross-petition was made by a judgment entered September 28, 1984. The Development Company undertook to appeal that disposition but the appeal was dismissed because the unresolved Count II deprived the September 28 judgment of finality.

The record does not show what prompted the trial court to act on the remaining count, but on December 16, 1985, the court dismissed the Development Company's claim for damages for failure to state a cause of action. The Development Company immediately appealed and in the subject point of error, it contends the dismissal was jurisdictionally unsound because the trial court entered judgment ordering the dismissal sua sponte and without notice or an opportunity to be heard. For purposes of the point, we assume such to be the fact.

It is not necessary to consider whether, in the case of an answer raising the issue of sufficiency in a pleading to state a cause of action, the court need await the presentation of a motion, as the Development Company argues, before ruling the question. Even were that to be the procedural requirement, it does not avail the appellant here because the Development Company has not argued or demonstrated any prejudice suffered.

In the first place, appellant did not seek any opportunity to amend the cross-petition, as is provided under Rule 67.06, and therefore elected to stand on the pleading as originally drawn. Any abuse of a procedural nature was thereby waived and the only question is whether the summary dismissal deprived the Development Company of the opportunity to have a sufficiently pleaded claim adjudicated on the merits. In this appeal, the Development Company does not attempt to show how the pleaded facts in Count II of the cross-petition state a cause of action or, if so, what the theory of the claim may be. Absent the demonstration of an arguable basis on which the Development Company could have prevailed had the petition count not been dis-missed, there is no ground for relief under the claim of procedural error.

The second ground for denying relief on this allegation of error lies in the conclusive effect which follows from the disposition of the other cross-petition claims. The basis for the cause of action was the assertion that acts of the City of Lake Lotawana in the enforcement of its ordinances applicable to the location and construction of boat docks were "illegal and unconstitutional." In the associated counts of the cross-petition, however, the trial court found that the city ordinances in question were not unconstitutional but were a valid exercise of municipal authority. If the City acted lawfully in regulating boat docks, it must necessarily be concluded that the Development Company had no cause of action for the implementation and application of those ordinances in cases where property owners, such as the McDonalds, sought permits.

The claim of error in the dismissal of the cross-petition Count II is denied.

## PROPOSED AMENDMENT OF PLAINTIFFS' PETITION COUNT FOR DAMAGES

In a cross-appeal, the McDonalds, who were the plaintiffs below seeking the mandatory injunction discussed earlier, complain that the trial court erroneously denied them leave to amend a count seeking damages from the Development Company and the City of Lake Lotawana. The issue of amendment arose in an unusual manner.

The original Count III of the McDonald petition claimed entitlement to recovery of damages under 42 U.S.C. § 1983. The theory of the cause appears to have been that the City, acting in combination with the Development Company, and under color of the governmental authority of the City, deprived the plaintiffs of their property rights as Lake Lotawana residents. Under the stipulation mentioned earlier, disposition of the damage claim was deferred pending trial of the other counts. Once those counts had been decided by the judg-

ment of September 28, 1984, however, the 42 U.S.C. § 1983 claim was eliminated because the judgment held the City's exercise of municipal authority to regulate boat docks to be a proper government act. At this point, the McDonalds sought leave to amend their Count III for damages to allege a different theory compatible with the partial disposition entered by judgment on the other counts. The trial court denied leave to amend and the McDonalds contend here that the refusal to permit their amendment was an abuse of the trial court's discretion.

The standard of review regarding a trial court's ruling on a motion to amend is stated in *Pender v. Foeste*, 329 S.W.2d 656, 659 (Mo.1959):

" * * * whether a particular amendment 'should be permitted is primarily within the sound judicial discretion of the trial judge, whose action will not be disturbed where * * * there is no showing that such discretion has been palpably and obviously abused.' "

To determine whether a trial court has abused its discretion, the reviewing court should determine whether justice was furthered or subverted by consideration of the following factors:

" * * * hardship to the moving party if leave to amend is denied, the reasons for the moving party's failure to include the new matter in its original pleading, and the injustice to the opposing party should leave be granted." *Baker v. Kansas City*, 671 S.W.2d 325, 329 (Mo.App.1984).

The McDonalds cite various cases stating that amendments should be liberally allowed and in particular they cite *Koch v. Victoria Loan Co.*, 652 S.W.2d 212 (Mo. App.1983) in support of their claim that the trial court should have granted leave to amend. Koch was granted leave by the trial court to amend his petition post trial by changing the formula to calculate his damages. The McDonalds claim their case is similar to *Koch* in that they are also merely seeking to change their "formula" for damages from a 42 U.S.C. § 1983 claim to an easement claim. The McDonalds also place emphasis on the fact that they sought to amend their pleading prior to the final judgment whereas Koch was granted leave to amend post trial. The McDonalds also cite *Peterson v. Kansas City Public Service Co.*, 259 S.W.2d 789 (Mo.1953), a personal injury case where the plaintiff was granted leave to amend the pleadings at the close of defendant's evidence for the purpose of increasing the amount of plaintiff's damages. However, *Koch* and *Peterson* are both inapplicable to this case because in the cited cases the plaintiffs were allowed to amend their pleadings in order to conform to the evidence produced at trial. That is not the situation here. Rather, as a result of the trial court's ruling on another point, the McDonalds realized their 42 U.S.C. § 1983 theory for damages would fail and, therefore, they sought to inject the easement theory into the proceeding.

The obvious fact here is that once the trial court had entered its ruling on the principal issues of the City ordinances, the McDonalds realized their theory supporting damages was not viable. The proposed amendment would have injected an entirely new proposition into the case requiring new evidence and, in effect, a retrial. No satisfactory explanation is given for the failure of plaintiffs to include the easement theory as an alternate count in their original petition rather than as a later attempt to conform to the trial court's declaration of the law. The prejudice to the defendants were the amendment permitted is also evident. When the relative prejudices are compared, that is, denial to the McDonalds of the right to plead a new cause of action and the imposition on the defendants of the necessity to face what would effectively be a new trial, the balance favors denial of the amendment. Also to be weighed is the factor lodging responsibility in the McDonalds for their failure to plead the alternate theory originally. At a minimum, it cannot be said that the trial court's ruling showed its discretion was "palpably and obviously abused." *Pender v. Foeste, supra.*

The judgment is affirmed.

All concur.