Dear Senator McCarthy:
This letter opinion is in response to your question asking:
 (A) Does a Central Emergency Dispatching Center funded by a three cent tax collected by a number of Fire Districts and controlled by a board made up of elected officials of each participating fire district:
 (1) Need to obey the state sunshine laws?
 (2) Need to observe all state laws governing fire districts?
 (B) Is a joint central fire and emergency dispatching service, as provided by sections 321.243 and 321.245 RSMo, 1978, as amended, which is funded by general tax revenues raised through such member fire protection districts, and independent political subdivision of the State of Missouri?
It is our understanding that a number of fire protection districts and municipalities in Saint Louis County, Missouri, have entered into a cooperative agreement under Article VI, Section 16, Missouri Constitution, and Sections 70.210 to 70.320, RSMo 1978, to form the Central County Emergency Dispatching Service ("Service"). The Service is funded with the three-cent levy provided for in Section 321.243, RSMo Supp. 1984, and is controlled by a joint board created under Section 70.260, RSMo 1978.
Section 70.230, RSMo 1978, provides the method of execution of such a cooperative agreement as follows:
 Any municipality may exercise the power referred to in section 70.220 by ordinance duly enacted, or, if a county, then by order of the county court duly made and entered, or if other political subdivision, then by resolution of its governing body or officers made and entered in its journal or minutes of proceedings, which shall provide the terms agreed upon by the contracting parties to such contract or cooperative action.
The municipalities that are parties to the cooperative agreement have executed the agreement by ordinance. The fire protection districts that are parties to the agreement have executed the agreement by resolution.
 I. Applicability of the Sunshine Law
Section 610.015, RSMo 1978, states:
 Except as provided in section 610.025, and except as otherwise provided by law, all public votes shall be recorded, and if a roll call is taken, as to attribute each "yea" and "nay" vote, or abstinence if not voting, to the name of the individual member of the public governmental body, and all public meetings shall be open to the public and public votes and public records shall be open to the public for inspection and duplication.
The definitions of the terms "public meeting", "public record", and "public vote" in Section 610.010(3), (4) and (5), RSMo Supp. 1984, refer to the term "public governmental body", defined in Section 610.010(2), RSMo Supp. 1984, which states:
 (2) "Public governmental body", any legislative or administrative governmental entity created by the constitution or statutes of this state, by order or ordinance of any political subdivision or district, or by executive order, including any body, agency, board, bureau, council, commission, committee, department, or division of the state, of any political subdivision of the state, of any county or of any municipal government, school district or special purpose district, any other legislative or administrative governmental deliberative body under the direction of three or more elected or appointed members having rulemaking or quasi-judicial power, any committee appointed by or under the direction or authority of any of the above named entities and which is authorized to report to any of the above named entities, and any quasi-public governmental body. The term "quasi-public governmental body" means any corporation organized or authorized to do business in this state under the provisions of chapter 352, 353, or 355, RSMo, which performs a public function, and which has as its primary purpose to enter into contracts with public governmental bodies, or engage primarily in activities carried out pursuant to an agreement or agreements with public governmental bodies; except urban redevelopment corporations organized or authorized to do business under the provisions of chapter 353, RSMo, which are privately owned, operated for profit, and do not expend public funds;
Thus, the Sunshine Law applies to certain meetings, records, and votes of public governmental bodies. The definition of the term "public governmental body" is limited to legislative or administrative governmental entities created by (1) the Missouri Constitution, (2) Missouri statute, (3) order of a Missouri political subdivision, (4) ordinance of a Missouri political subdivision or by (5) executive order. Administrative entities created by cooperative agreements authorized by statute which are executed in part by resolution and in part by ordinance are not expressly included in this definition.
A similar situation was faced in Cohen v. Poelker, 520 S.W.2d 50
(Mo. banc 1975). In Cohen the court determined that the Board of Estimate and Apportionment of the City of Saint Louis (a board created by city charter) was subject to the Sunshine Law. The reasoning of the court was that the General Assembly intended to prohibit secrecy in the conduct of governmental business at all levels of government through enactment of the Sunshine Law; accordingly, a strict application of the definition of the term "public governmental body" is not to be applied. We believe that the joint board governing the Central County Emergency Dispatching Service is the type of deliberative governmental body subject to the Sunshine Law; such joint board is a "public governmental body" under the Sunshine Law.
 II. Applicability of Fire Protection District Laws
We do not believe that we can answer the question of whether the Central Emergency Dispatching Service must comply with all state laws governing fire protection districts. This question can only be answered with respect to specific laws.
 III. Is a Joint Central Fire and Emergency Dispatching Service an Independent Political Subdivision?
In Opinion No. 38, 1979, copy enclosed, this office concluded that joint boards created by cooperative agreement under Section70.260, RSMo, may, depending upon the cooperative agreement, come within the definition of "instrumentality" for social security reporting services. The definition of the term "instrumentality", as found in Section 105.300(7), RSMo, required the instrumentality to be a juristic entity that is legally separate and distinct from the political subdivision(s). However, the definition of the term "political subdivision" usually connotes a governmental entity with the power to levy taxes. See, Kansas City AreaTransportation Authority v. Ashley, 478 S.W.2d 323, 324 (Mo. 1972),transferred, 485 S.W.2d 641 (Mo.App. 1972). Under Section 321.243, RSMo Supp. 1984, it is the city, town, village, or fire protection district that is a party to the cooperative agreement that levies the tax, not the joint board created under Section 70.260, RSMo 1978.
Accordingly, we conclude that joint boards created by cooperative agreement under Section 70.260, RSMo 1978, may, if the cooperative agreement so provides, be separate and distinct juristic entities; however, because such joint boards do not generally have the power to levy taxes, they are not separate and distinct political subdivisions in the normal sense.
Very truly yours,
 WILLIAM L. WEBSTER Attorney General